IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TARIUS D. GANAWAY, #2101504,  Plaintiff, v.  CALE WINE, JOHN CARAWAY, GREGORY DAVIS, and LISA GOLDMAN,  Defendants. | Case No. 19-cv-00621-SPM |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

This matter is before the Court on Defendants' motion for summary judgment. Defendants argue that Plaintiff failed to exhaust his administrative remedies prior to filing this suit. (Doc. 50). Ganaway filed a response in opposition to the motion. (Doc. 53). For the following reasons, the motion is granted.

### BACKGROUND

Plaintiff Tarius Ganaway commenced this action by filing a Complaint pursuant to 42 U.S.C. § 1983, while incarcerated at Dixon Correctional Center, for constitutional violations that occurred when he was housed at Menard Correctional Center. (Doc. 1). Ganaway claims that despite telling Dr. Goldman he was suicidal, Dr. Goldman directed Correctional Officer Careaway to remove him from crisis watch on August 15, 2018. After his removal, Careaway gave him a food tray with all of the utensils. Ganaway then used the utensils to cut himself, losing large amounts of blood.

A few days later, on or around August 18, 2018, while in a crisis cell, Ganaway alerted

Gallery Officer Wine and Correctional Officer Davis that he wanted to kill himself, and they ignored him. Ganaway then covered the window to his cell with a blanket and began to cut himself. Even after Wine and Davis saw him bleeding, he was allowed to remain in his cell and continue harming himself.

Following preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, Ganaway is proceeding with the following claims:

> **Count 1:** Eighth Amendment claim against Goldman and Careaway for failure to protect and deliberate indifference to Ganaway's risk of self-harm and suicide on August 15, 2018.
>
> **Count 2:** Eighth Amendment claim against Wine and Davis for failure to protect and deliberate indifference to Ganaway's risk of self-harm and suicide on or around August 18, 2018.

(*See* Doc. 8).

In the motion for summary judgment, Defendants argue that there is no evidence that Ganaway has exhausted his administrative remedies as to his claims of self-harm and Defendants' failure to provide him with medical and mental health care while he was on crisis watch in August of 2018. (Doc. 50). They state there is only one grievance that is relevant to the issues in this case, Grievance No. 86-10-18 dated September 25, 2018. Defendants concede that this grievance discusses the allegations in this case and names the Defendants but argue that Ganaway did not follow administrative procedure, and therefore, he failed to fully exhaust. According to Defendants, Ganaway submitted Grievance No. 86-10-18 as an emergency at the institutional level. The Chief Administrative Officer determined the grievance was not an emergency and returned the grievance to Ganaway with instructions for him to resubmit the grievance in the normal manner. Ganaway did not do this, and instead, he sent the grievance directly to the Administrative Review Board. Because Ganaway did not resubmit the grievance at the institutional level, he failed to follow procedures and did not exhaust his claims in this case.

For the most part, Ganaway agrees with the facts as presented by Defendants. (Doc. 53). He asserts he filed Grievance No. 86-10-18 on September 25, 2018. After it was determined that the grievance was not an emergency by the Chief Administrative Officer, he received the grievance back on October 29, 2018. He then mailed the grievance directly to the Administrative Review Board for review. Citing *Thornton v. Snyder,* Ganaway argues that he is allowed to appeal a determination that a grievance is not an emergency directly to the Administrative Review Board, and so, he did follow procedure and fully exhausted his claims. 428 F. 3d 690 (7th Cir. 2005).

## LEGAL STANDARDS

Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that the movants are entitled to judgment as a matter of law." *Wragg v. Vill. of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 ( 1986).

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id*. The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison

administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809. Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-41(7th Cir. 2008).

As an inmate confined within the Illinois Department of Corrections, Ganaway was required to follow the regulations contained in the Illinois Department of Corrections' Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. 20 ILL. ADMIN. CODE §504.800 *et seq*. The grievance procedures first require inmates to file their grievance with the Counselor within 60 days of the discovery of an incident. 20 ILL. ADMIN. CODE §504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE §504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the Grievance Officer. 20 ILL. ADMIN. CODE §504.820(a). The Grievance Officer reports his or her findings and recommendations in writing to the Chief Administrative Officer ("CAO"). 20 ILL. ADMIN. CODE §504.830(e). The CAO then provides the inmate with a written decision on the grievance. *Id.*

If the inmate is not satisfied with the CAO's response, he or she can file an appeal with the Director through the Administrative Review Board ("ARB"). "The appeal must be received by the Administrative Review Board within 30 days after the date of the decision" by the CAO. 20 ILL. ADMIN. CODE §504.850(a). The inmate shall attach copies of the Grievance Officer's report and

the CAO's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 ILL. ADMIN. CODE §504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 ILL. ADMIN. CODE §504.850(e).

The grievance procedures do allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the CAO who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus, the grievance should be handled on an emergency basis. 20 ILL. ADMIN. CODE §504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him what action shall be taken. 20 ILL. ADMIN. CODE §504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 ILL. ADMIN. CODE §504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 ILL. ADMIN. CODE §504.850(f).

## ANALYSIS

The parties agree that Grievance No. 86-10-18 is the only grievance relevant in this case. (Doc. 50, p. 10; Doc. 53, p. 9). Ganaway filed Grievance No. 86-10-18, marked as an emergency, on September 25, 2018, which names the individual Defendants and asserts the same allegations stated in the Complaint. (Doc. 53, p. 4; Doc. 50-5, p. 9-10). According to Ganaway and the

grievance records submitted by Defendants,[1] the grievance was received by the Grievance Office on October 2, 2018, and the CAO determined that the grievance was not an emergency on October 3, 2018. (Doc. 53, p. 5; Doc. 50-4, p. 4; Doc. 50-5, p. 9; Doc. 50-1, p. 2). Ganaway claims he received the grievance back with the CAO's determination on October 29, 2018. (Doc. 53, p. 4). He then sent the grievance for the review directly to the ARB that same day. (*Id.*).

The ARB received the grievance on December 6, 2018. (Doc. 53, p. 6; Doc. 50-4, p. 4; Doc. 50-5, p. 8). The ARB returned the grievance to Ganaway because he had not included responses from a Counselor, Grievance Officer, or CAO. He was instructed to provide the "original written Offender's Grievance, DOC 0046, including the counselor's response, if applicable, provide a copy of the Response to Offender's Grievance, DOC 0047, including the Grievance Officer's and Chief Administrative Officer's response, to appeal; if timely." (Doc. 50-5, p. 8). The ARB further noted that the grievance was misdirected noting specifically, "Personal property and medical issues are to be reviewed at your current facility prior to review by the Administrative Review Board and that the Plaintiff must follow DR 504.810." (*Id.*).

The Court finds that Ganaway did not follow grievance procedures when filing Grievance No. 86-10-18 directly with the ARB after receiving the determination from the CAO. Ganaway's argument that he may appeal a CAO's determination that a grievance is nonemergent directly to the ARB is incorrect. (*See* Doc. 53, p. 10). In 2017, the Illinois Administrative Code was amended to provide that "[i]f the Chief Administrative Officer determines that the grievance should not be

---

[1] The dates the grievance was received by the Grievance Officer and CAO and then returned to Ganaway are disputed, even within Defendants' own exhibits. Grievance Officer Kelly Pierce states in her declaration that the grievance was received by the Grievance Office, determined not to be an emergency by the CAO, and sent back to Ganaway on October 4, 2018. (Doc. 50-7, p. 4). While the declaration of Travis Bayler, the Chairperson of the Administrative Review Board and the grievance records submitted by Defendants, provide that the grievance was received by the Grievance Office on October 2, 2018, and marked non-emergency by the CAO on October 3, 2018. (Doc. 50-4, p. 4). This factual dispute does not impact the Court's determination regarding exhaustion.

handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 ILL. ADMIN. CODE § 504.840 (2017). The Seventh Circuit noted in *Williams* that an inmate filing grievances after this amendment took effect is required to resubmit any grievance determined to not be an emergency "under the normal procedure and complete the full three-stage process in order fully to exhaust available remedies." *Williams v. Wexford Health Sources, Inc.,* 957 F. 3d 828, 832 (7th Cir. 2020). *See also Smith v. Asselmeier,* 762 F. App'x 342, 344 (7th Cir. 2019) (holding that because the changes to Section 504.840 make resubmission available, the plaintiff had an available remedy that needed to be exhausted before filing suit). The cases cited to by Ganaway in support of his position address instances where the grievances were filed by inmates prior to the 2017 amendment and are not applicable here. (*See* Doc. 53, p. 10-11) (citing *Thornton v. Snyder,* 428 F. 3d 690 (7th Cir. 2005); *Glick v. Walker,* 385 F. App'x 579 (7th Cir. 2010)).

Ganaway further argues that the grievance procedures require an inmate to file directly with the ARB when they have been transferred to another facility. Because he was transferred to Dixon Correctional Center on December 13, 2018, prior to receiving the response from the ARB, he did not have to submit the grievance to the ARB again. (Doc. 53, p. 11-2) (citing *Glick v. Walker*, 385 F. App'x 579 (7th Cir. 2010)).

The grievance process does allow for certain grievances to be submitted directly to the ARB, including grievances about disciplinary and other issues at facilities other than the one an inmate is currently housed. *See* 20 ILL. ADMIN. CODE § 504.870(a). None of those circumstances, however, exist here. Ganaway was still housed at Menard at the time he received his grievance back from the CAO with the written instructions to "resubmit the grievance in the normal manner." (Doc. 50-5, p. 9). He did not do so, and instead, that same day, while at Menard where the event took place, he sent the grievance directly to the ARB. Because Ganaway failed to "take all the

steps the prison offers…and do so properly," he did not properly exhaust Grievance No. 86-10-18, and the motion for summary judgment is granted. *Williams,* 957 F. 3d at 833.[2] *See also Buck v. Knauer,* No. 18-cv-4195, 2021 WL 794979, at *12 (N.D. Ill. Mar. 2, 2021) (ruling that a plaintiff who had reached an administrative dead-end because he improperly filed a grievance directly with the ARB had failed to exhaust).

## DISPOSITION

For the reasons stated above, the Motion for Summary Judgment on Administrative Exhaustion (Doc. 50) filed by Defendants Cale Wine, Gregory Davis, John Caraway, and Lisa Goldman is **GRANTED**. This case is **DISMISSED without prejudice** for failure to exhaust. The Clerk of Court is **DIRECTED** to close the case and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:   June 11, 2021**

    *s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**

---

[2] Because the grievance was not resubmitted at the facility according to the grievance procedures, the Court will not address the timeliness argument raised by Defendants. (Doc. 50, p. 11).